## A. K. SWAN V. JOHN ACRES.

No. 6620.

**Fact Case.**—See testimony held sufficient to support a verdict sustaining the genuineness of a transfer attacked for forgery.

APPEAL from Clay. Tried below before Hon. J. A. Templeton, Special District Judge.

*A. K. Swan,* for appellant, cited: Satterwhite v. Rosser, 61 Texas, 166; Johnson v. Newman, 43 Texas, 642; Miller v. Brownson, 50 Texas, 583; Keys v. Mason, 44 Texas, 142; Johnston v. Eldridge, 49 Texas, 507; Eborn v. Cannon, 32 Texas, 231; Renn v. Samos, 33 Texas, 760; Wiggins v. Fleishel, 50 Texas, 57; Wright v. Lancaster, 48 Texas, 251; Austin v. Talk, 20 Texas, 164; Railway v. Rider, 62 Texas, 270.

*Barrett & Stine,* for appellee.

HOBBY, PRESIDING JUDGE.—This is an action of trespass to try title, in the usual form, brought in the court below by the appellant A. K. Swan against the appellee John Acres on the 7th day of November, 1884. The land sought to be recovered was located by virtue of land certificate No. 434, for 640 acres, issued on the 30th day of March, 1860, to the Buffalo Bayou, Brazos & Colorado Railway Company. The plaintiff (appellant) Swan claims title (1) by virtue of a patent from the State to the land in controversy granted to the Buffalo Bayou, Brazos & Colorado Railway Company on May 30, 1877; (2) a sale, transfer, and delivery of the certificate by virtue of which the land was located before the location thereof by said company to Ephraim Terry for his wife Mary Terry, alleged to have been made in the

spring of 1860; (3) deed from Ephraim Terry and wife to appellant Swan, May 31, 1884.

The appellee Acres, who was defendant below, claims title (1) under the patent above mentioned; (2) by virtue of a transfer of said land certificate alleged to have been made on the 23d of April, 1860, by John F. Barrett, president of said Buffalo Bayou, Brazos & Colorado Railway Company, to Elinor Manwaring; and (3) through mesne conveyances from her to the defendant Acres, the possession of the land for nine or ten years, payment of taxes thereon, and improvements erected, etc. The defendant pleaded both limitation of five years and improvements in good faith. Appellant filed an affidavit attacking as a forgery the transfer under which appellee claimed.

On September 17, 1887, a trial by a jury was had, and upon their verdict for the defendant the court rendered judgment that the plaintiff take nothing by his suit and discharging the defendant with costs. The former appeals.

The assignments of error, we think, considered together, may be treated as raising the question of the sufficiency of the evidence to support the judgment, which seems to be the principal ground relied on for a reversal.

The facts about which there seem to be no controversy are: That the certificate was issued to the Buffalo Bayou, Brazos & Colorado Railway Company on March 30, 1860, and was located on the land in controversy in July of that year, and was returned to the General Land Office in October, 1860. On the 30th of May, 1877, the patent issued to the Buffalo Bayou, Brazos & Colorado Railway Company.

The testimony of the plaintiff's witness Ephraim Terry, under whom he claimed, was to the effect that he "in the spring of 1860" purchased the certificate, together with twenty-nine or thirty other certificates of a similar description, from the Buffalo Bayou, Brazos & Colorado Railway Company, whose president executed a written transfer thereof. The certificates were "purchased out of the proceeds of the sale of his wife's property," he paying about $260 for each certificate. He testified that he obtained possession of the certificates "in the ordinary way of business," and "took the transfers in his own name. The transfers were made out in printed blanks in the ordinary form, etc., and conveyed all the title of said company to me, and were signed by the president of the company, sealed with its seal, and acknowledged before a notary." The witness stated that "he filed them with the other papers connected with the surveys located by virtue thereof in the Land Office about October, 17, 1860." He never took the transfers out of said office nor authorized any one to do so. The transfers were executed to witness, but the certificates belonged to his wife. The witness stated that he had made diligent search for the transfer and had not found it.

On cross-examination he testified "that he was not present when the land in controversy was located. The location was made by the surveyor (Bird) of all of the certificates. That he took the benefit of the bankrupt act in Jefferson, Texas, but did not render the land located under the certificates, as they belonged to his wife. He had never paid taxes on the land. He did not lose the transfer to the certificate in question—it was lost or stolen in the Land Office. Does not know who was present when the president signed the transfer. Don't know the name of the notary before whom he acknowledged it. Do not know whether any one has lived on the land. Did not bring this suit sooner because I could not find my title papers. Learned lately that I could recover, and was making arrangements to sue when we sold to appellant Swan. Have lived in Jefferson, Texas, for the last ten years."

The surveyor (Bird) testified to the location of a number of certificates for Terry in Cooke County. Did not remember that R. Manwaring ever placed any certificates in his hands to locate. Certificates were often placed with his deputy, in Clay County, and "he returned them to me with field notes and they were recorded in name of original grantee." He located no lands in Clay County. The land in suit is in that county.

W. S. Perry testified that he surveyed the land in controversy and understood that he was making the survey for Terry. The location was superintended by Hirk Whaley, who acted as agent for Terry.

Whaley testified that he was employed by his brother to make the survey for Terry.

It appeared from entries made in the application book in the Land Office that Ephraim Terry controlled the location of the certificate in question.

The foregoing constitutes substantially the proof made by the plaintiff Swan.

The defendant Acres introduced in evidence the original transfer, in connection with the testimony of the witness C. F. Acres. This transfer, with other papers containing what is claimed to be the genuine signature of John F. Barrett, was sent up with the record. The witness identified this transfer as the one taken by him to Boston, Mass., where John F. Barrett, the president of the Buffalo Bayou, Brazos & Colorado Railway Company, and who is dead, resided, and whose signature to the same he submitted to the witnesses Babbidge, Bowditch, Chapman, Aspinwall, and Jordon.

The instrument purports to transfer to Elinor Manwaring the land certificate in question, dated March 30, 1860, and numbered 434, issued by the State to the Buffalo Bayou, Brazos & Colorado Railway Company. It is dated on April 23, 1860, and is signed by John F. Barrett, president. It was acknowledged by him before R. D. Johnson, notary public for Galveston County, on April 23, 1860. From

the indorsement thereon it was filed in the Land Office August 31, 1861, and appears also to have been indorsed in that office, when filed there, as a transfer from said Barrett to Elinor Manwaring.

The testimony of the witnesses Chapman, Babbidge, Bowditch, Aspinwall, and Jordon was to the effect that Barrett was dead; they knew him well; were familiar with his handwriting or had seen him write; that the transfer was submitted to them by Acres, as testified to by him; that they believed the signature to the transfer was genuine and made by Barrett.

The witness R. Manwaring testified by depositions in substance that Elinor Manwaring was his wife; that he remembered the certificate well, as he kept a record of it and others for his wife during the war. He testified that in June, 1860, in Jefferson, Texas, he had the certificate in his possession. It was located in July, 1860, and filed in the General Land Office by Ephraim Terry on August 31, 1861. "I controlled the location in person and selected the land. The transfer made to my wife was dated March 30, 1860, as shown by my records." Did not see the transfer signed or acknowledged. The witness then described the corporate seal impressed on paper and pasted on the transfer. "There was no grantee's name on it until after he purchased it for his wife." Manwaring denied that Terry ever located it or saw it until it had been located. He went with the surveyor to Clay County and made the location and selected in person the land, but did not remember his name.

The defendant testified that he and his son had paid taxes on the land, and claimed since the purchase of it in March, 1882. Nine or ten years ago his son went on it; they have lived on it and used it since, having fenced it. There was proof of chain of title from Manwaring and wife to defendant.

The case was tried below upon the single issue of the genuineness of the transfer to defendant Acres by John F. Barrett, president of the Buffalo Bayou, Brazos & Colorado Railway Company, and as this necessarily involved a question of fact to be determined by the jury we have reproduced substantially the evidence on the trial, from which it will be seen that an irreconcilable conflict arises, which was decided by the verdict and decree adversely to plaintiff. The transfer to Elinor Manwaring was evidently not the one under which appellant claims, for he assails it as a forgery, and his testimony was to the effect that it was executed directly to Ephraim Terry. His evidence shows, too, that a different seal was used, and that the transfer to him was made, in his language, "in the spring of 1860." So then it is clear that if the transfer in evidence is genuine, and it was found so to be upon sufficient testimony, all the rights such a transfer could give, vested in Acres. Terry testifies that he had possession of the transfer. This is entirely consistent with Manwaring's statement that he delivered the

transfer to Terry to be filed in the Land Office. The indorsement on it when filed in the Land Office tends strongly to show that the transfer was to Manwaring's wife when it was filed by Terry in the Land Office. After the lapse of twenty-seven years, and the proof showing that Terry owned a large number of similar certificates, and the transfer in question having been delivered to him by Manwaring to be filed with his own in the Land Office, the sincerity of the witness' belief that the transfer was made to him may be conceded. But the proof, inconsistent with the fact that Barrett executed the transfer of this certificate to him, was sufficient to authorize the finding of the jury upon this point and to support the verdict.

We do not think the plaintiff's objection that the transfer in evidence was not sufficiently identified is well taken. The witness J. F. Acres testified that this transfer in evidence on the trial was the instrument submitted by him to the witnesses Chapman, Bowditch, and others, who testified that the signature of Barrett was genuine to the instrument or transfer submitted to them by Acres.

As before stated, the cause was tried upon the issue mentioned, and which was correctly considered by the parties and the court as decisive. The burden of proof was, as is well known, in this action on the plaintiff to establish title in himself. This he not only failed to do, as the evidence shows, but the defendant proved title in himself. There was no decree vesting title in the defendant, and we do not think the appellant can complain of the judgment. We think it should be affirmed.

*Affirmed.*

Adopted March 17, 1891.